# EXHIBIT A

NAM
NATIONAL ARBITRATION AND MEDIATION

VIA EMAIL AND REGULAR MAIL

September 24, 2026

James Serritella, Esq.
Kim & Serritella, LLP
110 W. 40th St, 10th Floor
New York, NY 10018
Email: jserritella@kandslaw.com

Jordan Reece, Esq.
Baughman Kroup Bosse, PLLC
One Liberty Plaza – 46th Floor
New York, NY 10006
Email: mjones@bkbfirm.com

**Re: MATTHEW HALL VS. GEMINI TRUST COMPANY, LLC; TYLER WINKLEVOSS AND CAMERON WINKLEVOSS**
**NAM ID No.: 282513**

Dear parties:

Attached please find Arbitrator Mayer's 8/11/26 Decision. The Arbitration is now closed.

If you have any questions, please contact me through written correspondence.

Thank you.

Sincerely,

Marinos Constanti
Account Executive
mconstanti@namadr.com

**NATIONAL ARBITRATION AND MEDIATION**
**IN THE ARBITRATION OF:**

Case Number: 282513

Matthew Hall

-vs-

Gemini Trust Company, LLC, Tyler Winklevoss, and Cameron Winklevoss

# Final Arbitral Award

I, the undersigned Arbitrator, Sylvia Mayer, having been duly designated, appointed, and approved by all parties and sworn to serve in this proceeding; having considered the pleadings, other filings, exhibits and other materials submitted; and having heard evidence admitted and arguments presented during the final hearing held in person at the offices of National Arbitration and Mediation ("**NAM**") on April 20-24, 2026, and continuing virtually on May 14, 2026; do hereby AWARD as follows:

## A. Identification Of Parties, Representatives, And Witnesses

1. **Claimant and Counter-Respondent:**

   a. Claimant and Counter-Respondent: Matthew Hall ("**Claimant**" or "**Hall**").

   b. Counsel: James Serritella, Lara Chassin, Johnny Shaw and Hee-Jean Kim with Kim & Serritella LLP and Josh Gardner with Gardner Rosenberg, PC.

2. **Respondents and Counterclaimant:**

   a. Corporate Respondent and Counterclaimant: Gemini Trust Company LLC ("**Gemini**" or "**Respondent Gemini**").

   b. Individual Respondents: Tyler Winklevoss and Cameron Winklevoss (collectively with Gemini, "**Respondents**").

   c. Counsel: John Baughman, Andrew Bosse, Allison Melton, Jordan Reece with Baughman Kroup Bosse PLLC.

d. Corporate Representative: Andrew Beatty.

3. **Witnesses:**

a. Fact Witnesses:

1) Claimant Matthew Hall;

2) Joshua Golebieski (“**Golebieski**”);

3) Respondent Cameron Winklevoss[1] (“**Respondent Cameron**” or “**Cameron**”);

4) Respondent Tyler Winklevoss (“**Respondent Tyler**” or “**Tyler**”);

5) Thomas Vaniotis (“**Vaniotis**”); and

6) Anson Frelinghuysen (“**Frelinghuysen**”).

7) The record in this case includes both the live testimony from each of the witnesses listed above, and also the deposition testimony and *Asquith* arbitration hearing testimony of Cameron, Tyler, and Golebieski.

b. Claimant’s Expert Witnesses:[2]

1) Kevin Herzberg (“**Herzberg**”); and

2) Robert Jones (“**Jones**”).

---

[1] To avoid any confusion in references to Respondent Cameron Winklevoss and Respondent Tyler Winklevoss, with the consent of the parties, each is referred to by their first names. The use of first names is meant to convey no disrespect. It is purely a naming convention to avoid any confusion.

[2] By agreement, direct testimony of Claimant’s expert witnesses was introduced through expert reports followed by live testimony for cross-examination and re-direct.

c. Respondents' Expert Witness:[3]

1) Angelo Chan ("**Chan**").

**B. Applicable Arbitration Clause, Governing Law, Arbitration Statute, and Rules of Procedure**

1. **Arbitration Clause:** By agreement between the parties, the applicable arbitration clause is found in the User Agreement. *Exh. J-010B.*

2. **Governing Law:** By agreement between the parties, the laws of the State of New York apply to this arbitration. In addition, Claimant asserted that the consumer laws of the State of Texas were applicable; however, as discussed below, Claimant's claim under the Texas Deceptive Trade Practices Act ("**DTPA**" ) was dismissed.

3. **Arbitration Statute:** By agreement between the parties, the Federal Arbitration Act applies to this arbitration.

4. **Rules of Procedure:** Subject to determination of whether this arbitration should be considered a consumer arbitration, which Respondents' disputed, the parties agreed that the NAM Comprehensive Dispute Resolution Rules and Procedures (updated 10/1/2024) ("**NAM CDR Rules**") and the NAM Mass Filing Supplemental Dispute Resolution Rules and Procedures (updated 10/1/2024) ("**NAM MA Rules**") apply to this arbitration. As discussed below, Respondents' objection to the classification of this arbitration as a consumer arbitration was overruled.

**C. Summary Only:**

1. The parties are familiar with the procedural and substantive history of this arbitration and the extensive evidence, briefing, and argument presented in this arbitration.

2. As a result, this Final Award includes only a summary of relevant procedural history, facts, and allegations to provide context. It is not intended to be a comprehensive summation of all material information

[3] By agreement, direct testimony of Respondents' expert witness was introduced through expert reports followed by live testimony for cross-examination and re-direct.

or events, allegations made, or of the evidence or arguments submitted or considered.

3. While specific exhibits, testimony, and other materials may be referred to herein, the Arbitrator's findings and rulings are based on the totality of the record in this arbitration, including, but not limited to the operative pleadings, pre- and post-hearing submissions, exhibits admitted, expert reports, transcripts submitted and reviewed, testimony heard, arguments presented, and orders entered. While over 1,200 exhibits were designated, many of which were admitted, the Arbitrator focused particularly on the exhibits referenced by the witnesses and the parties.

## D. Summary of Procedural History

4. **Operative Pleadings:**

a. In October 2024, Claimant filed his Demand for Arbitration/Arbitration Notice and his Statement of Claim and Addendum to Statement of Claim.

b. In January 2025, Respondents filed their Answer and Gemini's Counterclaim.

c. Also in January 2025, Claimant filed his Answer to Counterclaims.

5. **Relevant Orders, Stipulations, and Rulings:**

a. On March 20, 2025, a preliminary hearing and scheduling conference was held in this case. Following the conference, the Arbitrator issued her Report on Preliminary Hearing Conference and Scheduling Order, dated March 20, 2025; which was amended by Scheduling Order Number Two, dated October 3, 2025; Scheduling Order Number Three, dated January 22, 2026; and the Fourth Scheduling Order, dated February 9, 2026 (collectively, the "**Scheduling Orders**").

b. On May 12, 2025, the Arbitrator issued the Order Overruling Respondents' Objection to Consumer Classification.

c. On July 2, 2025, the Arbitrator issued the Order Granting, in Part, and Denying, in Part, (a) Respondents' Motion to Dismiss and (b) Claimant's Cross-Motion to Dismiss ("**Dispositive Ruling**"). Among other things, the Dispositive Ruling (i) dismissed, with prejudice, Claimant's DTPA claim, and (ii) dismissed Respondents' breach of contract and fraudulent inducement counterclaims without prejudice to Respondents' right to assert such counterclaims as defenses, rather than claims, at the final hearing.

d. In September 2025, the parties entered into the Discovery Cross-Designation Stipulation ("**Disc. Stip.**"). Among other things, the Disc. Stip. provided for the use of Cameron, Tyler, and Golebieski's depositions in this arbitration and established streamlined procedures for discovery in the bellwether cases.

e. On April 10, 2026, the parties entered into the Revised Stipulation of Undisputed Facts, which stipulates certain facts not in dispute.

f. On March 29, 2026, the Arbitrator issued her Rulings from the March 27, 2026 Hearing. Among other things, the ruling memorializes the parties' agreement that (i) the Arbitrator may refer to this arbitration as one of the fifteen bellwether cases being administered by NAM and (ii) both the deposition transcripts and *Asquith* hearing transcripts for Cameron, Tyler, and Golebieski are admissible in this arbitration.

6. **Bellwether Status:**

a. This arbitration is one of fifteen bellwether cases administered by NAM.

b. In addition to these bellwether cases, an arbitration proceeding was initiated with the American Arbitration Association and styled No. 01-22-0005-3033, *Eric Asquith v. Gemini Trust Company, LLC, Tyler Winklevoss, and Cameron Winklevoss*. This proceeding is referred to herein as "***Asquith***."

## E. Summary of Certain Relevant Factual Findings

1. Claimant first began investing in cryptocurrency in 2012.

2. Cameron and Tyler formed Gemini in 2014 and launched its online crypto platform, Gemini Exchange, in 2015.

3. Claimant registered for an account on the Gemini Exchange in February 2016 and, as part of that process, accepted the User Agreement with Gemini. The parties have agreed that the applicable "**User Agreement**" is identified as *Exh. J-010B*.

4. Between August 22, 2016 and June 20, 2024, Claimant participated in thousands of transactions on the Gemini Exchange.

5. In 2018, Gemini established the Gemini Dollar ("**GUSD**"), which is a stablecoin pegged 1:1 to the U.S. Dollar.

6. At all times relevant to this arbitration, Claimant's cryptocurrency assets primarily consisted of GUSD and Ethereum ("**ETH**").

7. In February 2021, Gemini launched the Gemini Earn Program ("**Earn Program**"), which allowed users of the program ("**Earn Users**") to loan their digital currency to Genesis Global Capital, LLC ("**Genesis**").

8. To participate in the Earn Program, users were required to accept the Gemini Earn Program Terms and Authorization Agreement ("**Program Terms**") and the Master Digital Asset Loan Agreement ("**MDALA**"). The parties have agreed that the applicable Program Terms and MDALA are identified as *Exh. J-009B* and *Exh. J-011,* respectively.

9. Although the Program Terms refer to Borrowers (plural), the only Borrower that ever participated in the program was Genesis. Genesis was the only entity ever listed as a Borrower in the Program Terms.

10. In connection with launching the Earn Program, Gemini vetted Genesis as a borrower and then conducted regular risk management reviews of Genesis and the Earn Program throughout the program's existence, including engaging in regular dialog with Genesis to identify, assess, and mitigate risk.

11. While the User Agreement and Program Terms were agreements between Gemini and Earn Users, the MDALA was an agreement between Genesis (as borrower), each Earn User (as lender), and Gemini (acting as a custodian and agent for the Earn Users).

12. Pursuant to the MDALA and Program Terms, Gemini acted as a custodian for and authorized agent of the Earn Users for certain limited purposes. Specifically, Gemini acted as custodian and agent to (a) receive and then transfer the Earn User's digital currency to Genesis, (b) upon a loan's termination, receive and then transfer the Earn User's digital currency from Genesis to the Earn User, and (c) receive and then transfer to the Earn User the loan fees paid by Genesis.

13. In addition, both the MDALA and Program Terms provided that, in the event of a default by Genesis, Gemini was authorized to act as agent for the Earn Users to declare loan balances due and payable, to transfer collateral to be held for the benefit of Earn Users, and to exercise any rights or remedies available to Earn Users as lenders.

14. Gemini did not act as a financial advisor to Earn Users, including Claimant. Claimant testified that he did not expect Gemini to give him investment advice and that he understood he was solely responsible for his investment decisions.

15. When an Earn User chose to proceed with a transaction under the Earn Program, they were required to acknowledge and confirm that their digital assets would be lent to Genesis.

16. By May 2021, Claimant was no longer earning a salary or paycheck, but instead living off of his cryptocurrency investment income.

17. On May 21, 2021, Claimant signed up for the Earn Program, agreed to the Program Terms and MDALA, and made his first deposit and loan through the Earn Program.

18. When Claimant enrolled in the Earn Program and agreed to the Program Terms and MDALA, Genesis was the only borrower identified in the Program Terms and the borrower specified in the MDALA.

19. On November 22, 2021, through the Earn Program, Claimant redeemed a loan to Genesis for the first time.

20. Between May 2021 and November 2022, Claimant participated in hundreds of transactions through the Earn Program whereby he loaned his cryptocurrency (both GUSD and ETH) to Genesis.

21. Between May 2021 and November 2022, Claimant received over $58,000 in loan fees (essentially, interest payments) on assets he loaned to Genesis through the Earn Program.

22. Between May 2021 and November 2022, Claimant redeemed loans and initiated new loans on multiple occasions through the Earn Program.

*23.* Claimant testified that he understood that (a) through the Earn Program, he was loaning his cryptocurrency to Genesis, (b) he bore both market risk and counterparty risk as a result of the loans, and (c) Genesis was a crypto lender that could loan out his cryptocurrency to other borrowers.

24. Beginning in the summer of 2022, the cryptocurrency industry experienced a "crypto winter" during which several cryptocurrency companies filed bankruptcy or experienced financial distress. The cryptocurrency failures in 2022 negatively impacted Genesis' cryptocurrency lending business.

25. In response to the strains of the crypto winter of 2022 and its impact on Genesis, Gemini sought collateral from Genesis for the benefit of the Earn Users.

26. On August 15, 2022, Gemini and Genesis entered into a Security Agreement whereby Genesis transferred 30,905,782 shares of Grayscale Bitcoin Trust ("**GBTC**") to an account held in Gemini's name as custodian for the Earn Users.

27. Gemini did not inform Earn Users that it requested and obtained this collateral.

28. Unaware of Gemini's decision to obtain collateral from Genesis, on August 12, 2022, Claimant initiated a new loan to Genesis.

29. Pursuant to the Security Agreement, Gemini held the funds as collateral in the event of a default by Genesis under the MDALA.

30. On September 2, 2022, Gemini decided to terminate the Earn Program. Gemini's decision to terminate the Earn Program was, at least in part, based on a business decision to focus on staking instead of lending.

31. Gemini did not inform the Gemini Earn Users of its decision to close the program.

32. Unaware of Gemini's decision to terminate the Earn Program, on September 20, 2022, Claimant initiated his last loan to Genesis through the Gemini Earn Program.

33. On October 13, 2022, Gemini issued a termination notice to Genesis terminating all outstanding loans made by Earn Users to Genesis and requesting return of Earn Users' digital assets loaned to Genesis.

34. Gemini did not inform the Earn Users that it had sent Genesis a notice of termination and requested a return of the digital assets loaned to Genesis.

35. On November 3, 2022, through the Gemini Earn Program, Claimant redeemed a loan to Genesis for the last time.

36. On November 15, 2022, Claimant received his last loan fee from Genesis.

37. On November 16, 2022, Genesis stopped honoring redemption requests, stopped paying loan fees, and defaulted on loans made by Earn Users. Effectively, all digital assets on loan to Genesis were frozen, including Claimant's 340.3979151872360 ETH and 351,716.83 GUSD ("**<u>Claimant's Genesis Assets</u>**").

38. On November 16, 2022, one ETH had a notional value of $1,215.60, while one GUSD, which was pegged to the U.S. Dollar, had a notional value of $1.00. As a result, on November 16, 2022, Claimant's Genesis Assets were valued at $765,504.54 (calculated as 340.3979151872360 x $1,215.60 = $413,787.71 in ETH plus $351,716.83 in GUSD).

39. Later that same day, on November 16, 2022, Gemini foreclosed on the collateral posted by Genesis and held the proceeds in trust for Gemini Earn Users.

40. Between November 16, 2022 and May 29, 2024, Claimant was unable to access any of his Genesis Assets and received no loan fees on his Genesis Assets.

41. Because Claimant relied on the revenue generated by his Genesis Assets, he borrowed funds from Citibank, LightStream, and his mother.

42. On January 19, 2023, Genesis filed for bankruptcy.

43. On May 22, 2023, Gemini filed a master claim in the Genesis bankruptcy case on behalf of all Earn Users, including Claimant. Claimant testified that he understood that Gemini filed the claim on behalf of all Earn Users, including him, and that he did not object to Gemini filing the claim on his behalf.

44. On April 19, 2024, the bankruptcy court approved a settlement between Gemini, on behalf of the Earn Users, and Genesis allowing the master claim and providing a mechanism for the return of digital assets to Earn Users. Claimant did not object to the settlement.

45. The bankruptcy settlement resolved all claims of the Earn Users under the MDALA, including claims for loaned cryptocurrency, loan fees (essentially, interest), late fees, new tokens, and any other claims against Genesis arising under the MDALA and the August 2022 security agreement.

46. The bankruptcy settlement compensated Earn Users, including Claimant, for the loss of access to their digital assets due to Genesis' failure to return digital assets and pay loan fees or interest as required under the MLA.

47. In its January 13, 2026 Memorandum Decision, the bankruptcy court confirmed that, while under New York law claimants are not entitled to double recovery, the bankruptcy settlement does not bar Earn Users from pursuing claims against Gemini to recover damages not already compensated for as part of the settlement (if any).

48. On May 31, 2024, the Bankruptcy Court confirmed the Genesis Chapter 11 Plan. Claimant did not object to confirmation of the plan.

49. On May 29, 2024, Gemini credited Claimant's account with 332.773001887042 in ETH and 343,838.36 in GUSD.

50. On May 29, 2024, 1 ETH had a notional value of $3,763.20; thus, on May 29, 2024, Claimant received ETH and GUSD valued at $1,596,129.72 (calculated as 332.773001887042 x $3,763.20 = $1,252,291.36 in ETH plus $343,838.36 in GUSD).

51. On June 20, 2024, Gemini credited Claimant's account with 7.6249133001941 in ETH and 7,878.46 in GUSD.

52. On June 20, 2024, 1 ETH had a notional value of $3,511.09; thus, on June 20, 2024, Claimant received ETH and GUSD valued at $34,650.22 (calculated as 7.6249133001941 x $3,511.09 = $26,771.76 in ETH plus $7,878.46 in GUSD).

53. As a result of these transfers, Claimant received 100% of his outstanding ETH and GUSD. Indeed, Claimant testified that he received a coin-for-coin recovery from the Genesis bankruptcy.

54. Moreover, due to appreciation in the value of ETH, when Claimant received his Genesis Assets back in May and June 2024, in the aggregate, the digital assets were valued at $1,630,779.94.

55. Notably, prior to the distributions to the Earn Users, "no cryptocurrency customers had ever recovered any appreciation in the value of their coins following the filing of a bankruptcy." *Exh. RX-351.*

**F. Summary of Claims to be Adjudicated**

**1. Claimant's Claims:**

a. Common Law Fraud, Fraudulent Inducement, and Fraudulent Concealment (each asserted against all Respondents): Claimant alleges that Respondents made material misrepresentations and omissions concerning the Earn Program. As a result, Claimant invested or remained invested in the Earn Program.

b. Aiding and Abetting Fraud (against Cameron and Tyler): Claimant alleges that Cameron and Tyler aided and abetted Gemini's fraud.

c. Civil Conspiracy (against all Respondents): Claimant alleges that Respondents conspired to defraud Claimant, which caused Claimant to invest in and remain invested in the Earn Program.

d. Breach of Fiduciary Duty (against Gemini): Claimant asserts that Gemini breached its fiduciary duty to Claimant by making material misrepresentations or omissions concerning the Earn Program.

e. Aiding and Abetting Breach of Fiduciary Duty (against Cameron and Tyler): Claimant asserts that Cameron and Tyler aided and abetted Gemini's breach of its fiduciary duty.

f. Negligent Misrepresentation, Negligence, and Gross Negligence (each asserted against all Respondents): Claimant asserts that Respondents failed to exercise reasonable care in connection with the services provided to Claimant or recklessly failed to provide services to Claimant.

g. Negligent Infliction of Emotional Distress (against all Respondents: Claimant alleges that Respondents' acts or omissions inflicted emotional distress on Claimant.

h. New York General Business Law (against Gemini): Claimant alleges that Gemini engaged in deceptive acts or practices in furnishing services to consumers.

i. Unjust Enrichment (against Gemini): Claimant alleges that Gemini was unjustly enriched as a result of its misconduct.

j. Money Had and Received (against Gemini): Claimant alleges that Gemini received funds belonging to Claimant and did not pay those funds back to Claimant as it was obligated to do.

k. Promissory Estoppel (against all Respondents): Claimant alleges that Respondents made promises to Earn Users, including Claimant, and that Claimant relied on those promises to his detriment.

l. Relief Sought:

i. For substantially all of his claims, Claimant seeks an award of pre-judgment interest as he was deprived of his access, possession, and enjoyment of his Genesis Assets.

ii. In addition, Claimant seeks statutory damages under New York General Business Law § 349; non-economic damages for his claim of negligent infliction of emotional distress; lost opportunity costs or expectation damages for his breach of fiduciary duty claim; and restitution damages for his unjust-enrichment claims.

iii. Claimant also seeks an award of attorney's fees and costs under both the MDALA and New York General Business Law § 349.

2. **Gemini's Counterclaim:**

a. Indemnification: Gemini seeks indemnification under the User Agreement (*Exh. J-010B)* and the Program Terms (*Exh. J-009B*) for attorney's fees, costs, and other amounts expended in connection with this arbitration.

## G. Burden of Proof:

1. **Clear and Convincing:** The parties agree that Claimant's burden of proof on the following claims is clear and convincing evidence:

a. Common Law Fraud Claim (against all Respondents),

b. Fraudulent Inducement Claim (against all Respondents),

c. Fraudulent Concealment Claim (against all Respondents), and

d. Claimant's Aiding and Abetting Fraud Claim (against Cameron and Tyler).

2. **<u>Preponderance of the Evidence:</u>** The parties agree that Claimant's burden of proof on the following claims is preponderance of the evidence:

   a. Civil Conspiracy Claim (against all Respondents),

   b. Breach of Fiduciary Duty Claim (against Gemini),

   c. Aiding and Abetting Breach of Fiduciary Duty Claim (against Cameron and Tyler),

   d. Claimant's Negligent Misrepresentation Claim (against all Respondents),

   e. Claimant's Negligence Claim (against all Respondents),

   f. Gross Negligence Claim (against all Respondents),

   g. Negligent Infliction of Emotional Distress Claim (against all Respondents),

   h. New York General Business Law § 349 Claim (against Gemini),

   i. Claimant's Unjust Enrichment Claim (against Gemini),

   j. Money Had and Received Claim (against Gemini), and

   k. Promissory Estoppel Claim (against all Respondents).

3. The parties disagree on whether the burden of proof on Claimant's Negligent Misrepresentation Claim (against all Respondents) is clear and convincing evidence or preponderance of the evidence.

4. Based on the analysis below, whether Claimant's burden is clear and convincing or preponderance of the evidence on his Negligent Misrepresentation Claim makes no substantive difference; accordingly, the preponderance of the evidence standard will be applied.

## H. Determination and Ruling on Claims Asserted and Submitted in this Arbitration by Claimant:

1. Claimant's Fraud Claims (including Common Law Fraud, Fraudulent Inducement, Fraudulent Concealment, Aiding and Abetting, and Civil Conspiracy):

a. The allegations underlying Claimant's fraud claims can be summarized as: (i) Respondents falsely represented that Gemini vetted the "accredited" borrower, Genesis, included in the Earn Program and conducted ongoing risk management review of the Earn Program and Genesis as a borrower, (ii) Respondents falsely represented Gemini's exposure during the crypto winter, (iii) Respondents failed to disclose risks Gemini identified regarding Genesis, (iv) Respondents failed to disclose that Gemini obtained collateral from Genesis in August 2022, (v) Respondents failed to disclose that they had decided to terminate the Earn Program in September 2022, and (vi) Respondents failed to disclose that Gemini sent a notice of termination to Genesis in October 2022.

b. While Gemini's risk management review may not have been perfect, the evidence presented established that its risk management review was robust at the inception of the Earn Program and then continued on a periodic and ongoing basis.

c. As reflected in the governing documents and acknowledged by Claimant, when enrolling in the Earn Program, Earn Users were advised that they bore both market risk and counterparty risk through the Earn Program. Claimant testified that he understood he bore these risks. He also testified that he was solely responsible for his investment decisions, including whether to make loans, when to make loans, and when to redeem loans.

d. It is indisputable that Genesis misrepresented its exposure during the crypto winter, thus deceiving not only Gemini and the Earn Users, but also many other investors about its financial stability.

e. However, Claimant's allegation that Gemini falsely represented its own exposure during the crypto winter, including to FTX or Alameda, is unsubstantiated.

f. It is undisputed that Gemini failed to disclose to Earn Users that (i) in August 2022, it requested and obtained collateral from Genesis, (ii) in September 2022, it decided to terminate the Earn Program, and (iii) in October 2022, it sent a notice of termination to Genesis.

g. However, there is no evidence that Respondents intended to defraud Claimant by failing to make these disclosures. Instead, the evidence established that Respondents acted with the intent to protect Earn Users by obtaining collateral in August and, after the decision to terminate the program, conducting an orderly and coordinated wind-down process.

h. As a result of the bankruptcy settlement and the distributions in May and June 2024, Claimant has been compensated for Genesis' failure to deliver his Genesis Assets or pay loan fees under the MDALA.

i. To recover on any of his fraud claims, Claimant must establish that he suffered harm distinguishable from the harm addressed by the bankruptcy settlement.

j. The crux of Claimant's damages theory is a demand for compensation for loss of access to his Genesis Assets.

k. After his Genesis Assets were frozen, Claimant testified that he borrowed money from LightStream, Citibank, and his mother; however, he could not recall the exact amounts borrowed or the interest rates charged. No other evidence was presented regarding his borrowing costs.

l. Instead, Claimant quantified his loss by presenting Jones' expert testimony calculating pre-judgment interest on his Genesis Assets.

m. Jones testified that he has never met Claimant, never spoken to Claimant, and had no information on Claimant's investment objectives.

n. Common Law Fraud and Fraudulent Inducement:

i. Claimant failed to establish by clear and convincing evidence that Respondents made a material misrepresentation to Claimant.

ii. Claimant failed to establish by clear and convincing evidence that Respondents made a material misrepresentation that induced Claimant to invest in or remain invested in the Earn Program.

iii. Claimant failed to establish by clear and convincing evidence that Respondents intended to defraud Claimant.

iv. Claimant failed to establish by clear and convincing evidence that Claimant suffered harm resulting from any alleged fraud that is distinguishable from the harm addressed by the bankruptcy settlement.

v. Claimant lost access to his digital currency due to Genesis' failure to deliver his Genesis Assets or pay loan fees as required under the MDALA.

vi. Under the bankruptcy settlement, Claimant has been compensated for loss of access to his Genesis Assets.

vii. For the reasons set forth herein, Claimant's claim for common law fraud is **DENIED** and Claimant's claim for fraudulent inducement is **DENIED**.

o. Fraudulent Concealment:

i. For the reasons set forth herein, Claimant's claim for fraudulent concealment based on false and misleading statements regarding how the Earn Program would work, Gemini's risk management assessment and ongoing review of Genesis and the Earn Program, and failure to disclose any risks identified regarding Genesis, is **DENIED**.

ii. Claimant failed to establish by clear and convincing evidence that Respondents intended to fraudulently conceal that they requested and obtained collateral in August 2022,

decided to terminate the Earn Program in September 2022, and that they sent a notice of termination to Genesis in September 2022.

iii. Instead, the evidence established that Respondents acted with the intent to protect Earn Users by obtaining collateral in August and, after the decision to terminate the program, conducting an orderly and coordinated wind-down process.

iv. Further, the evidence established that Respondents' decision to terminate the Earn Program was, at least in part, based on a business decision to focus on staking instead of lending, rather than based on a risk assessment of the program.

v. Claimant presented some evidence that might support a finding of harm to Claimant distinguishable from the harm addressed by the bankruptcy settlement. Examples include (1) unaware that Gemini requested and obtained collateral from Genesis, on August 22, 2022, Claimant initiated a new loan to Genesis through the Earn Program, (2) unaware of Gemini's decision to terminate the Earn Program, on September 20, 2022, Claimant initiated his last loan to Genesis through the Earn Program, and (3) after his cryptocurrency was frozen by Genesis, he borrowed money from Citibank, LightStream, and his mother.

vi. However, Claimant failed to present any damages-related evidence specific to these unique harms distinguishable from the harm addressed by the bankruptcy settlement.

vii. Claimant's argument for the award of pre-judgment interest based on a hypothetical damages award of the full value of Claimant's Genesis Assets is creative and novel, but not supported by applicable law.

viii. For the reasons set forth herein, Claimant's claim for fraudulent concealment based on Respondents' failure to disclose that it requested and obtained collateral in August 2022, decided to terminate the Earn Program in September

2022, and sent a notice of termination to Genesis in October 2022 is **DENIED**.

p. Aiding and Abetting Fraud: For the reasons set forth herein, Claimant's claim for aiding and abetting fraud is **DENIED**.

q. Civil Conspiracy:

i. Each of Claimant's fraud claims has been denied. As a result, there can be no civil conspiracy to commit fraud.

ii. For the reasons set forth herein, Claimant's claim for civil conspiracy is **DENIED**.

2. Claimant's Breach of Fiduciary Duty Claims (including Breach of Fiduciary Duty and Aiding and Abetting):

a. Gemini served as custodian and agent for Claimant for certain limited purposes to facilitate the Earn Program loans and Earn Users' exercise of any remedies.

b. Custodial Duties: Claimant did not allege that Gemini breached its duties as custodian by improperly transferring Claimant's Genesis Assets to Genesis.

c. Claimant's Statement of Claim alleges that Gemini received funds belonging to Claimant, but failed to remit these funds to Claimant. No evidence was presented to substantiate this allegation. Other than this unsubstantiated allegation, Claimant did not allege or establish that Gemini breached its duties as custodian by improperly withholding loan fees or digital currency received from Genesis for Claimant's benefit.

d. Effective November 16, 2022, Genesis stopped paying loan fees or redeeming loans. Notwithstanding Genesis' failure to pay loan fees, Claimant alleges that Gemini failed to properly custody Claimant's assets by failing to pay loan fees and failing to redeem loans between November 16, 2022 and May 29, 2024.

e. Claimant is conflating Gemini's custodial duties with Genesis' obligations as a borrower. Gemini's role was to custody digital

currency or loan fees between Genesis and the Earn Users such as Claimant. Gemini's custodial duties were limited to facilitating the transactions between Claimant and Genesis.

f. Agent Duties: Claimant did not allege that Gemini breached its duties as agent by filing a master claim in Genesis' bankruptcy case, by negotiating a settlement of the master claim, or by making distributions of digital assets pursuant to the settlement. Indeed, Claimant was a vocal supporter of the settlement and did not object to either the filing of the master claim or the settlement.

g. Instead, Claimant alleges that Gemini breached its fiduciary duty by omitting or misrepresenting information related to the investments (the loans to Genesis) and by failing to monitor or implement adequate risk management review of the investments.

h. However, Claimant testified that he understood that Gemini was not acting as his financial advisor and that he was solely responsible for his investment decisions.

i. Claimant's participation and investment in the Earn Program were self-directed. As Claimant confirmed in his testimony, under the Earn Program, Gemini had no discretion over when he would lend digital currency, how much he would lend, which digital currency he would lend, or when he would redeem his digital currency loans.

j. Claimant failed to establish that Gemini owed Claimant a fiduciary duty beyond the limited scope created under the MDALA and Program Terms.

k. Breach of Fiduciary Duty: For the reasons set forth herein, Claimant's claim for breach of fiduciary duty is **DENIED.**

l. Aiding and Abetting Breach of Fiduciary Duty: For the reasons set forth herein, Claimant's claim for aiding and abetting breach of fiduciary duty is **DENIED**.

3. Claimant's Negligence Claims (including Negligent Misrepresentation, Negligence, and Gross Negligence):

a. The allegations underlying Claimant's negligence claims are the same as those underlying Claimant's fraud claims: (i) Respondents falsely represented that Gemini vetted the "accredited" borrower, Genesis, included in the Earn Program and conducted ongoing risk management review of the Earn Program and Genesis as a borrower, (ii) Respondents falsely represented Gemini's exposure during the crypto winter, (iii) Respondents failed to disclose risks Gemini identified regarding Genesis, (iv) Respondents failed to disclose that Gemini obtained collateral from Genesis in August 2022, (v) Respondents failed to disclose that they had decided to terminate the Earn Program in September 2022, and (vi) Respondents failed to disclose that Gemini sent a notice of termination to Genesis in October 2022.

b. While the legal standards and burden of proof may differ between the fraud claims and the negligence claims, the conclusions remain the same regarding the negligence claims premised on accreditation of Gemini, Gemini's risk management review of the Earn Program and Genesis, Gemini's exposure during the crypto winter, and risks Gemini identified regarding Genesis.

c. For the reasons stated herein, Claimant's claims for negligence, negligent misrepresentation, and gross negligence regarding accreditation of Gemini, Gemini's risk management review of the Earn Program and Genesis, Gemini's exposure during the crypto winter, and risks Gemini identified regarding Genesis are **DENIED**.

d. Significantly more troubling are Claimant's claims for negligence, negligent misrepresentation, and gross negligence regarding Respondents' failure to disclose that Gemini requested and obtained collateral in August 2022, decided to terminate the Earn Program in September 2022, and sent a notice of termination to Genesis in October 2022.

e. Gemini continued to market the Earn Program and continued to allow Earn Users, including Claimant, to initiate loans to Genesis notwithstanding these material and significant undisclosed developments.

f. However, as with the fraud claims, although Claimant presented some evidence that might support a finding of harm to Claimant distinguishable from the harm addressed by the bankruptcy settlement, Claimant failed to present damages-related evidence specific to these unique harms distinguishable from the harm addressed by the bankruptcy settlement.

g. Claimant's argument for the award of pre-judgment interest based on a hypothetical damages award of the full value of Claimant's Genesis Assets is creative and novel, but not supported by applicable law.

h. For the reasons set forth herein, Claimant's claims for negligence, negligent misrepresentation, and gross negligence based on Respondents' failure to disclose that it requested and obtained collateral in August 2022, decided to terminate the Earn Program in September 2022, and sent a notice of termination to Genesis in October 2022 are **DENIED**.

4. <u>Claimant's New York General Business Law § 349 Claim:</u>

a. The allegations underlying Claimant's claim under New York General Business Law § 349 ("**<u>GBL 349</u>**") are essentially the same as those underlying Claimant's fraud and negligence claims; however, the legal analysis is different.

b. GBL 349 is a consumer protection law. To prevail, Claimant must establish that Gemini engaged in consumer-oriented conduct that misled Claimant and that Claimant suffered harm as a result.

c. GBL 349 includes a failure to disclose if the information was such that a reasonable consumer would want to know but could not discover without difficulty.

d. Under GBL 349, absent a showing of scienter, statutory damages are $50. Further, the award of attorney's fees is discretionary.

e. For the reasons stated herein, Claimant's GBL 349 claim regarding accreditation of Gemini, Gemini's risk management review of the Earn Program and Genesis, Gemini's exposure during the crypto winter, and any risks Gemini identified regarding Genesis is **DENIED**.

f. However, Claimant, a consumer, has established that Gemini failed to disclose that it requested and obtained collateral in August 2022, decided to terminate the Earn Program in September 2022, and sent a notice of termination to Genesis in October 2022.

g. Absent disclosure by Gemini, there was no way for Claimant to know about these events.

h. Unaware that Gemini requested and obtained collateral from Genesis, on August 22, 2022, Claimant initiated a new loan to Genesis through the Earn Program.

i. Unaware of Gemini's decision to terminate the Earn Program, on September 20, 2022, Claimant initiated his last loan to Genesis through the Earn Program.

j. Unaware of Gemini's decisions and actions in August, September, and October, Claimant did not redeem all of his outstanding loans in the Earn Program. As a result, Claimant's Genesis Assets were frozen on November 16, 2022.

k. While Claimant did not present evidence to quantify his injury resulting from Gemini's failure to disclose these material events, Claimant was injured. He invested funds without material information in August and September 2022 and borrowed money to sustain himself and his family between November 16, 2022 and May 2024 while his Genesis Assets were frozen.

l. However, there is no evidence that Gemini intended to deceive Claimant by failing to make these disclosures; thus, there is no basis to award treble damages.

m. For reasons stated herein, Claimant's GBL 349 claim regarding Gemini's repeated failures to disclose is hereby **GRANTED,** and Claimant is awarded statutory damages of **$50**.

5. Claimant's Negligent Infliction of Emotional Distress Claim:

a. Claimant failed to establish by a preponderance of the evidence that Respondents directly caused his emotional distress. While the situation was no doubt stressful, Claimant's emotional distress was due to Genesis' default and not actions taken by Gemini.

b. Claimant failed to establish by a preponderance of the evidence that he suffered any harm as a result of Gemini's acts or omissions. Claimant testified that, following the November 16, 2022 freeze of his Genesis Assts, he did not see a doctor for his distress, he did not receive mental health treatment for his distress, and he did not take any medication for his emotional distress.

c. For the reasons set forth herein, Claimant's Negligent Infliction of Emotional Distress Claim is **DENIED**.

6. Claimant's Unjust Enrichment Claim:

a. Unjust enrichment is a quasi-contract claim only available if there is no enforceable contract.

b. The agreements between the parties (including the MDALA, Program Terms, and User Agreement) are enforceable contracts, thus precluding Claimant's unjust enrichment claim

c. Moreover, there is no evidence that Gemini benefited from Genesis' default and the freeze of Claimant's account on November 16, 2022.

d. Accordingly, Claimant failed to establish that Gemini was unjustly enriched at Claimant's expense.

e. For the reasons set forth herein, Claimant's claim for unjust enrichment is **DENIED**.

7. Money Had and Received Claim:

a. Money had and received claims are also quasi-contract claims only available if there is no enforceable contract.

b. The agreements between the parties (including the MDALA, Program Terms, and User Agreement) are enforceable contracts, thus precluding Claimant's money had and received claim.

c. Moreover, Claimant alleges that Gemini received funds that belonged to Claimant and did not pay those funds to Claimant; however, this allegation is unsubstantiated.

d. For the reasons set forth herein, Claimant's claim for money had and received is **DENIED**.

8. Claimant's Promissory Estoppel Claim:

a. Promissory estoppel is another quasi-contract claim only available if there is no enforceable contract.

b. The agreements between the parties (including the MDALA, Program Terms, and User Agreement) are enforceable contracts, thus precluding Claimant's promissory estoppel claim

c. Moreover, Claimant's promissory estoppel claim is based on allegations substantially similar to Claimant's fraud claims, each of which were denied.

d. For the reasons set forth herein, Claimant's promissory estoppel claim is **DENIED**.

9. Claimant's Claim for Attorney's Fees and Costs:

a. Claimant seeks an award of attorney's fees and costs under both the MDALA and New York General Business Law § 349.

b. Claimant is not entitled to an award of attorney's fees and costs under the MDALA. The MDALA provides that the prevailing party in litigation to enforce the MDALA is entitled to recover attorney's fees and costs. Claims related to enforcement of the MDALA were resolved in the bankruptcy settlement. In this arbitration, Claimant did not assert that Respondents breached the MDALA.

c. While Claimant did prevail on his GBL 349 claim, the award of attorney's fees and costs is entirely discretionary.

d. As a result of the bankruptcy settlement, Claimant has been fully compensated for the loss of access to his Genesis Assets.

e. As Claimant has been fully compensated for the loss of access to his Genesis Assets and presented no evidence quantifying his injury under GBL 349, the Arbitrator declines to exercise her discretion to award attorney's fees or costs to Claimant.

f. For the reasons set forth herein, Claimant's claim for an award of attorney's fees and costs is **DENIED**.

**I. Determination and Ruling on Claims Asserted and Submitted in this Arbitration by Respondent Gemini:**

1. Gemini's Indemnification Claim:

a. Each of the User Agreement, Program Terms, and MDALA contains indemnification provisions.

b. In this case, the MDALA indemnification provision is expressly limited to indemnification for claims made by third parties. In contrast, the User Agreement and the Program Terms are silent on whether intra-party disputes are included.

c. Unless the agreement makes it unmistakably clear that intra-party disputes are included in the indemnification provision, indemnification does not extend to intra-party disputes.

d. Accordingly, intra-party disputes are excluded, and Respondents are not entitled to indemnification.

e. For the reasons set forth herein, Respondent Gemini's claims for indemnification are **DENIED**.

## J. Final Disposition of All Claims and Defenses

1. This Final Award constitutes the final decision on the merits of all claims and defenses asserted or submitted in this arbitration.

2. In summary, the final disposition of claims asserted is as follows:

   a. Claimant's GBL 349 claim is **GRANTED** and Claimant is awarded **$50** in statutory damages.

   b. All of Claimant's other claims are **DENIED**.

   c. Respondent Gemini's claim is **DENIED**.

   d. Claimant and Respondent Gemini's requests to recover attorney's fees, costs, or expenses are hereby **DENIED**. Each party shall bear their own costs and expenses.

3. Any claims asserted or submitted in this arbitration not expressly granted herein are **DENIED** in all respects.

4. NAM's administrative fees and Arbitrator compensation shall be borne as incurred.

IT IS SO ORDERED.

Dated: August 11, 2026

________________________________

Sylvia Mayer, Arbitrator